[Crim. No. 3277. First Dist., Div. Two. July 29, 1957.]

THE PEOPLE, Respondent, v. JOHN CLIFFORD HYLES, Appellant.

Helm & Corbett and Roger Corbett for Appellant.

Edmund G. Brown, Attorney General, Clarence A. Linn, Assistant Attorney General, William M. Bennett and Victor Griffith, Deputy Attorneys General, for Respondent.

DOOLING, J.—Appellant Hyles was charged jointly with one Ann Lucas in two counts with the possession and sale of marihuana. The two were tried jointly and the jury brought in verdicts of guilty on both counts against both defendants.

The evidence showed that one Watkins had previously purchased marihuana from Ann Lucas. This was discovered by the police and they arranged with Watkins to make another purchase of marihuana with marked currency supplied by the police to Watkins.

On January 3, 1956, the police gave Watkins $30 in marked currency. Watkins met Ann Lucas at a bar known as "John's Club" at about 8 p. m. Appellant Hyles was seated at the bar about 30 feet from Watkins. Watkins gave Ann Lucas $20 of the marked currency and Ann Lucas walked to where appellant was seated and remained with him about five minutes. Watkins saw nothing handed by Ann Lucas to appellant nor by appellant to her. Mrs. Lucas then returned to Watkins and said: "Let's go."

Watkins and Mrs. Lucas got into a car and drove to Watkins' home. They were followed by officers who had been waiting outside John's Club and Mrs. Lucas was arrested. A search of her person by the officers disclosed a bag of marihuana in her coat.

When appellant Hyles left John's Club he got into a car parked nearby. He was approached by other officers who had been waiting outside and a search of the automobile which he had entered disclosed a bag of marihuana on the floor under the front seat. Appellant denied any knowledge of this marihuana. The marked $20 in currency which had been given by Watkins to Mrs. Lucas was found on appellant's person.

Mrs. Lucas did not testify but a great deal of evidence of statements of Mrs. Lucas in which she had said that she got the marihuana found on her person from appellant, and also that she had obtained the marihuana previously found in the possession of Watkins from appellant, was admitted against Mrs. Lucas but not against the appellant, since this was obviously hearsay as to him.

The above recital of the evidence shows that the case against appellant, particularly as to sale, was a very weak circumstantial one. Mrs. Lucas was not searched before the transaction. She may have had the marihuana on her person before entering John's Club for all the evidence discloses. The case in this respect is but little stronger than *People* v. *Barnett*, 118 Cal.App.2d 336 [257 P.2d 1041], in which the court held that possession of marked money by the appellant which had been given to an informer who later delivered narcotics was not sufficient to establish that the appellant had sold the narcotics to the informer.

 In view of the weakness of the evidence in this respect we are satisfied that the misconduct of the prosecutor in argument was prejudicial error compelling a reversal.

The following is found in the transcript of the prosecutor's argument to the jury:

"Mr. QUINLAN: . . . They've talked a lot about this not being applicable to Hyles, and under the law it's not, and we don't ask you to consider it against Hyles. But if she takes the stand and testifies and says that that marihuana was sold to her by Hyles, then it is admissible against Hyles.

"Mr. SULLIVAN: Just a moment. I'm going to assign that statement as misconduct on the part of the District Attorney and respectfully ask the Court to admonish the Jury to disregard it.

"THE COURT: The Jury is instructed to disregard the last statement of counsel as to what the law is. I'll instruct on the law.

"Proceed.

"Mr. QUINLAN: I will say, then, that——

"Could I have my last statement, Mr. Reporter, read to me, please?

"Mr. SULLIVAN: I'm going to object.

"Mr. QUINLAN: I want to argue, and I don't want to say something that is wrong, Your Honor. But I'm entitled to make my argument.

"Mr. SULLIVAN: I'm going to——

"Mr. QUINLAN: If I've made a statement of law that is wrong, I want to withdraw it. But I'm entitled to argue.

"Mr. SULLIVAN: I'm going to respectfully ask the Court to not permit the statement, which has been stricken by the Court, and the Jury admonished to disregard it, to be reread. Why, it's Mr. Quinlan's insinuation that he can't even remember what he says himself.

"Mr. Quinlan: All right, I'll withdraw it. And I'll say this, then, Ladies and Gentlemen: Ask yourselves. We'll say there's no question about this. Any evidence that's testified to by anyone in this courtroom from that chair is available for you to consider against both defendants.

"Mr. Sullivan: Just a moment. I assign that statement as misconduct, and I respectfully ask the Court to admonish the Jury to disregard it. The evidence by the witness Jones as to the statement he took from Ann Lucas, the Court has repeatedly told this Jury it is not admissible against Hyles, and Mr. Quinlan flaunts that by stating that any evidence which anybody has testified is admissible against both defendants.

"Mr. Quinlan: Her testimony would be, Your Honor. That's all I claim.

"The Court: Never mind, Counsel.

"Mr. Quinlan: Excuse me.

"The Court: The Court is going to rule, and I don't want any more remarks from counsel after I have ruled.

"The Jury is instructed to disregard the last statement of the District Attorney.

"Now, don't refer to that again, gentlemen, or you'll be adjudged in contempt. These are not idle threats on the part of the Court. And I'm not signaling [sic] out you, Mr. District Attorney, or you, Mr. Defense Attorney. You're all alike to me.

"Proceed.

"Mr. Quinlan: And what are all the circumstances here? On the 28th he gives her the $20.00 She admits it in her statement. And then she goes and buys it from Hyles.

"Mr. Sullivan: Now, just a moment. I'm going to assign that as a misstatement of the evidence, and again ask the Court to admonish the Jury to disregard it.

"The Court: Now, Counsel, the Court is not going to instruct the Jury to disregard that statement. This is the evidence as the District Attorney perhaps remembers it. But if there's any doubt in the minds of the Jury as to what has been testified to here during the course of the trial, then upon the request of the Foreman of the Jury, the Jury will be brought back into court and that particular part of the testimony that they're in doubt about will be read back to them by the Court Reporter.

"Proceed, Mr. District Attorney. You're consuming time here.

"MR. QUINLAN: If there's any doubt about it, read the statement, Ladies and Gentlemen.

"MR. SULLIVAN: Just a moment, Your Honor.

"MR. QUINLAN: So——

"THE COURT: What is it?

"MR. SULLIVAN: I'm going to again ask the Court to admonish the Jury that that statement does not prove the purchase of anything from Hyles.

"THE COURT: Counsel, this is argument on the part of the District Attorney. It's argument.

"Proceed, Mr. District Attorney."

The portion of the transcript just quoted demonstrates that the prosecuting attorney, while giving lip service to the rulings of the trial court that testimony of Mrs. Lucas' extrajudicial statements incriminating appellant Hyles were under the law not to be considered by the jury in determining appellant's guilt, nevertheless persistently and contumaciously continued to argue, over successive adverse rulings of the court, that they should in fact consider such statements. The prosecutor concluded this contumacious conduct by his statement, over express request of appellant's counsel to the court to admonish the jury to disregard Mrs. Lucas' statements incriminating the appellant: "If there's any doubt about it, read the statement, Ladies and Gentlemen." Counsel for appellant then asked the court again "to admonish the Jury that that statement does not prove the purchase of anything from Hyles." Instead of doing so, as the law demanded, the court said: "Counsel, this is argument on the part of the District Attorney. It's argument."

The court should again have told the jury expressly that this was improper argument which the jury should not consider against appellant Hyles. Whether such an admonition would have cured the prosecutor's persistent and flagrant misconduct in the face of repeated objections and repeated properly adverse rulings and admonitions of the court, we need not decide. Unfortunately the court, in its final ruling, departed from the previous correct rulings and admonitions that the jury should not consider Mrs. Lucas' unsworn declarations as evidence against appellant and left the matter to the jury by the equivocal statement "this is argument on the part of the District Attorney. It's argument."

The difficulty inherent in a jury's setting aside incriminating evidence not legally admissible against a particular defendant in determining that defendant's guilt or innocence

is great enough when the prosecuting attorney is meticulous, as he should be, in refraining from any attempt to influence the jury against such defendant by arguing such evidence against him. But when the prosecutor over repeated objections and rulings of the court, as in this case, flagrantly persists in arguing the effect of such incompetent evidence against the defendant and finally secures from the judge such an equivocal statement as that quoted that "this is argument," which would only be construed by the jury to mean "this is proper argument," we cannot escape the conclusion that the defendant suffered prejudice in the minds of the jury.

At the outset of the trial counsel for appellant asked the prosecutor to elect whether he was seeking to have appellant held guilty of the possession of the marihuana found in the car or that found on the person of Mrs. Lucas. This the prosecutor refused to do. We cannot tell from the record the basis of the jury's verdict. They found Mrs. Lucas guilty of both possession and sale. She has not appealed, but the only marihuana found in her possession was that involved in the sale. The jury must have had this marihuana in mind in finding her guilty of possession. Whether it had this marihuana in mind in finding appellant guilty of possession cannot be determined from the record. The court did not instruct the jury that it could not find a defendant guilty of possession and sale in the same transaction involving the same marihuana. (*People* v. *Roberts*, 40 Cal.2d 483, 491 [255 P.2d 784].)

Furthermore, even if we should assume (an assumption the correctness of which is left in doubt by the record) that the jury found appellant guilty of possession of the narcotics found in the car which he entered rather than of the narcotics found in his codefendant's possession, the misconduct of the prosecutor cannot be said not to have contributed to their verdict on the possession count. Appellant denied any knowledge of the narcotics found in the car. ▇ In order to find him guilty of its possession the jury must draw two inferences from the fact that it was found in the car which he entered: 1. that he knowingly had dominion over it and 2. that he knew that it was a narcotic substance. (*People* v. *Winston*, 46 Cal.2d 151, 158 et seq. [293 P.2d 40].) In determining whether to draw these necessary inferences against appellant (if it did in fact do so) the jury could not avoid being influenced by their determination that appellant had just previously sold other narcotics to his codefendant Mrs. Lucas.

If another trial is held Mrs. Lucas' guilt will not be in

issue and there will be no danger of any similar prejudice to appellant occurring, since Mrs. Lucas' statements incriminating him can not be before the jury.

Under the circumstances of this case we cannot say that the prosecutor's misconduct did not affect the verdict of guilty on both counts.

Judgment reversed.

Kaufman, P. J., and Draper, J.—We concur in the judgment. However, we cannot join in the view that the trial judge failed in his duty properly to admonish the jury. He did all that could be expected in this respect, and reiteration of his oft-given admonition would have served no purpose. We do feel that the error of the prosecuting attorney was such, in this close case, that it could not be cured by any degree of instruction by the court.